IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, Receiver,

                Plaintiff,            Case No. 3:04 CV 1514

-vs-

                                                 MEMORANDUM   OPINION

ARDAN GROUP, LTD.,

                Defendant.

KATZ, J.

### BRIEF BACKGROUND

This action is brought by the Receiver against the Defendant broker for recovery of commissions related to the sales of insurance policies to Alpha Capital Group and Liberte Capital Group who, in turn, sold interests in the policies as viatical investment vehicles. This third amended complaint contends violations under: (1) the Civil Racketeer Influenced and Corrupt Organization Act ("RICO"); (2) unjust enrichment/quantum meruit; (3) civil conversion; and (4) common law fraud. For the second time, the Defendant moves to dismiss the complaint in its entirety based upon flaws in the pleadings as well as on the basis that the complaint is untimely.

### DEFENDANT'S MOTION TO DISMISS

*A. Motion to Dismiss Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v.*

*King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); *Westlake*, *supra*, at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed. 2006).

*B. Count 1: Statute of Limitations*

The Defendant contends Plaintiff's RICO allegations are untimely and subject to dismissal. The Supreme Court in *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987), set forth a four year state of limitations period relative to civil RICO actions. In *Rotella v. Wood*, 528 U.S. 549 (2000), the Court revisited the issue when it considered the accrual of an civil action under RICO for statute of limitations purposes. The issue before the Court was whether the accrual date of the petitioner's action was delayed until he discovered an alleged pattern of racketeering activity. The Court noted that two[1] types of accrual methods were utilized by the various appellate courts. The injury discovery rule, adopted by a majority of circuits, triggered the statute of limitations when a plaintiff knew or should have known of his injury. *Id.* at 553. The injury and pattern discovery rule, utilized by the Sixth Circuit, allowed accrual of the

---

[1] The Supreme Court also discussed a third approach known as the "last predicate act" rule. Under this approach, "the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern." *Id.* at 554. However, this approach was eliminated by the Court in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) as it could have extended the statute of limitations "beyond any limit that Congress could have contemplated." *Id.*

claim only when the claimant discovered or should have discovered both an injury and a pattern of RICO activity. *Id.* The Supreme Court rejected the injury and pattern discovery rule noting:

> By tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases beyond the time when a plaintiff's cause of action is complete, as this case shows.

*Id.* at 558.

Following the Supreme Court's guidance, the Sixth Circuit recognized that in the context of a civil RICO action, "the running of the statute of limitations begins when a plaintiff is put on inquiry notice–that is, when a plaintiff has been presented with evidence suggesting the possibility of fraud." *Sims v. Ohio Casualty Ins. Co.*, 151 Fed. Appx. 433, 436 (6th Cir. 2005), *cert. denied*, 127 S.Ct. 109 (2006). (Citation omitted.) *See also Bygrave v. Van Reken*, 238 F.3d 419, 2000 WL 1769587 (6th Cir. 2000) (noting *Rotella* did not require discovery of both the injury and a pattern of racketeering activity).

In this instance, the issuance dates of the relevant policies occurred in the years 1997-1998. In April 1999, Liberte Capital Group ("Liberte) initiated suit against James Capwill ("Capwill"), Viatical Escrow Services ("VES"), Capital Fund Leasing ("CFL") and other various Capwill entities. In July 1999, pursuant to a request from Alpha Capital Group ("Alpha"), the Capwill entities of VES and CFL were placed in receivership by the district court. *Liberte v. Capwill, et al.*, Case No. 5:99 CV 818 (N.D. Ohio) (Doc. Nos. 121 and 132). In that action, initiated by Liberte, claims of embezzlement were leveled against Capwill, among others, that Capwill utilized the escrow funds for his own personal use. Alpha intervened in the *Liberte* litigation shortly after its inception.

Approximately a year later, in May 2000, the government initiated litigation against Liberte and its principal, J. Richard Jamieson ("Jamieson"), alleging a scheme to defraud insurance companies and investors. It therefore, follows, that by May of 2000, both the Liberte and Alpha investors were clearly on notice that allegations of fraud surrounded their viatical investments on a number of fronts. Thus, the "storm warnings" began brewing in April 1999 and were more than evident to both sets of investors by May 2000. *Sims*, 151 Fed. Appx. at 436. This civil RICO action commenced in August 2004 is, therefore, outside of the statute of limitations. *Rotella, supra*.

As the Court has determined this action to be outside of the applicable statute of limitations, it need not address the arguments aimed at the alleged flawed pleadings. Accordingly, the first cause of action under RICO is dismissed as untimely.

*B. Counts Two Through Four: Pendant State Court Claims*

The remaining claims contained in Plaintiff's third-amended complaint are based upon the "purchase of worthless, fraudulently procured life insurance policies from Defendants" to "Liberte Capital" who then "passed those instruments to investors." (Third Amended Compl., ¶ 79.) Count Two, grounded in unjust enrichment, seeks "compensatory damages equal to the fees that the Defendants and viators. . . received for the sale of defective, fraudulent 'wet-ink' policies to Liberte." (*Id.* at p. 29.) Count Three, sounding in conversion, requests "compensatory damages equal to the fees and payments that the Defendants and the viators, whose life insurance policies Defendants sold to Liberte Capital, received for the sale of defective and fraudulent policies to Liberte." (*Id*. at p. 30.) Count Four alleges common law fraud based upon "false representations

4

to Liberte Capital concerning the validity of the life insurance policies (viaticals) that they were offering to Liberte Capital for sale." (*Id.* at ¶ 86.)

The Defendant seeks dismissal of these claims claiming they are barred by the statute of limitations under Ohio Rev. Code § 1707.43, which states in pertinent part:

> (B) No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

The Plaintiff objects that this is not a case sounding in securities fraud nor does he seek to recover investment dollars expended by the investors. As noted by the Ohio Supreme Court in *Lawyers Cooperative Publishing Co. v. Muething*, 65 Ohio St.3d 273, 277 (1992), "courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded," in order to apply the appropriate statute of limitations.

The Court has carefully reviewed the third amended complaint. Even if the Plaintiff is not seeking recovery of the purchase price, he is seeking a recovery of fees or commissions which is based upon or arises out a sale of made in violation of Section 1707 to which the applicable statute of limitations of §1707.43(B) apply. For example, the civil conversion claim states as follows:

> 81) The payments that Defendants and the viators, whose policies the Defendants sold to Liberte Capital, received from the sale of the fraudulent "wet-ink" policies do not belong to the Defendants or to the viators. The monies that Defendants and viators received for the sale of worthless, fraudulently procured policies belong to the Plaintiff.
>
> 82) Defendants have refused to remit the monies that are the property of the Plaintiff, notwithstanding that the Plaintiff has made a demand for return of his

5

>property and that the Defendants are well aware of the demand that have been made of them.
>
>83) Defendants' refusal to return the monies that were wrongfully paid to them constitutes a civil conversion of funds as those funds rightfully belong to Plaintiff.
>
>84) Wherefore, the Plaintiff, William T.Wuliger, is entitled to damages consisting of the dollar amount of monies that were paid to Defendants and to the viators for the sale of worthless, fraudulently procured life insurance policies (viaticals).  And the Plaintiff is also entitled to prejudgment interest at the rate of 10%, calculated from the point in time or points in time that the Defendants and the viators, whose policies Defendants sold to Liberte Capital, received payments for the sale of those fraudulent life insurance policies to Liberte Capital.

(Third amended compl.)

There can be little doubt that each of Plaintiff's remaining state law claims arose out of a sale of these viaticals as Plaintiff pleads "[t]he sale of fraudulent life insurance policies by Defendants here to Liberte Capital were the proximate cause of the injuries suffered by Liberte Capital and its investors and thus by the Plaintiff Receiver." (*Id*. at ¶ 90.)   Stated differently, although the  Defendant broker  is not an agent as the Defendant in *Wuliger v. Anstaett*, 363 F.Supp.2d 917 (N.D. Ohio 2005), the claims in *Anstaett* also sought "unearned commissions relative to the viatical investments." *Id.* at 934.  The "fees" and "payments" which the Plaintiff seeks to recover from the Defendant are no different from "unearned commissions."

Assuming the last sale date of the relevant policies was August 1998[2] and this Court, in *Anstaett*, previously determined that the investors were on notice by July 2000, this action was untimely after July 2002 as the two year period must be applied under § 1707.43.  Even if the

---

[2] Third amended complaint ¶ 55(4) and  (7).

Court is to consider the five year period, the suit must have been filed by July 2003. As this case was filed on August 2, 2004, it is clearly outside the statute of limitations and must be dismissed.

## CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss (Doc. No. 46) is granted. Case closed.

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE